IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

JAMES "AARON" HILL,

        Plaintiff,

v.                                                                                                    No. CV 15-00886 WJ/KBM

CITY OF SANTA FE;
BRIAN K. SNYDER, in his official and individual capacity;
RENEE MARTINEZ, in her official and individual capacity; and
SANDRA PEREZ, in her official and individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

    THIS MATTER comes before the Court upon Defendants the City of Santa Fe, Brian K. Snyder, Renee Martinez, and Sandra Perez's ("Defendants") Motion for Summary Judgment on the Basis of Qualified Immunity (**Doc. 27**), filed May 31, 2016. Having reviewed the parties' briefs and the applicable law, the Court finds that Defendants' Motion is well-taken, and therefore **GRANTED**, as herein described.

### BACKGROUND

    Plaintiff James "Aaron" Hill ("Plaintiff") was employed by the City of Santa Fe ("the City") in the City's Information Technology and Telecommunications ("ITT") Department, where he worked in the Network Operations Center. Plaintiff was also a member of the American Federation of State, County, and Municipal Employees Union ("the Union"). The Union and the City have entered into a collective bargaining agreement ("CBA") that governs how discipline and disputes are handled between employees and the City.

<u>1.</u>      <u>Defendants' Facts</u>

On or about September 30, 2014, Perry Knockel ("Mr. Knockel"), a supervisor in the ITT Department, notified City officials through an Incident Report Form that he had engaged in a conversation with Plaintiff in which Plaintiff allegedly stated to Mr. Knockel that he sometimes felt like shooting a co-worker named Nancy Howley ("Ms. Howley"), and that at night he sometimes wished that she would die. Upon receipt of these reported statements, the City issued a memorandum to Plaintiff on October 2, 2014, notifying him that an administrative investigation would be opened. In conjunction, the City's Human Resources Director sent a memorandum to the City Manager, Defendant Brian K. Snyder ("Mr. Snyder"), requesting that Plaintiff be placed on administrative leave while the administrative investigation was conducted. The City Manager approved this request, and a memorandum was sent to Plaintiff on October 2, 2014 placing him on administrative leave. Plaintiff received and signed the memorandum that day. The City contracted with an outside investigator, Doug Shawn ("Mr. Shawn") of Universal Investigation Services to conduct an investigation into Mr. Knockel's allegations. Mr. Shawn completed his investigation on October 27, 2014 and concluded that the allegations against Plaintiff were deemed "sustained." On October 31, 2014, Defendant Renee Martinez issued a memorandum to Plaintiff titled "Notice of Contemplated Action/Pre-Determination Meeting," informing him of the time and place of a pre-determination meeting and the meeting's purpose to discuss the findings of the investigation. Plaintiff attended the pre-determination meeting on November 6, 2014 with the representation of counsel. At the meeting, Plaintiff signed a form waiving his right to Union representation during the disciplinary proceeding.

On November 12, 2014, Plaintiff was sent a Notice of Action recommending that his employment be terminated and informing him that he had the right to appeal the action to the

City Manager. Plaintiff's counsel filed an appeal of the proposed disciplinary action four days later. On November 24, 2014, the City Manager filed a response to the appeal, concurring with the recommended action and terminating Plaintiff's employment. The Union did not file an appeal on Plaintiff's behalf to take the case to binding arbitration.

2.     Plaintiff's Facts

Plaintiff's factual background begins prior to the September 30, 2014 incident with Mr. Knockel. On October 14, 2013, Ms. Howley requested permission to change her job location after making allegations against fellow employees. On or about October 30, 2013, Ms. Howley sent an email to Edward J. Duran ("Mr. Duran") and Zeke J. Perea, both co-workers, asking them to proofread a complaint she wanted to file against individuals employed with the City, including Plaintiff. Mr. Duran responded to Ms. Howley and provided numerous changes to her complaint, which Plaintiff suggests are emotional reasons not written by Ms. Howley. Plaintiff states that he received a copy of these emails when someone left them at the front door of his residence. As a result of Ms. Howley's complaint, Plaintiff was presented with a letter of discipline. Plaintiff states that this 2013 letter of discipline violated the Union Collective Bargaining Agreement ("CBA") in two ways: Ms. Howley's complaint was not filed within fifteen (15) days of the violation and Plaintiff was not provided with the required supporting documentation that should accompany any disciplinary action. On those bases, Ms. Howley's complaint should have been dismissed and Plaintiff should not have received any disciplinary action.

After the September 30, 2014 incident with Mr. Knockel, Plaintiff states that he was not provided with either of the October 2, 2014 memoranda notifying him of an administrative investigation and placing him on administrative leave. However, that same day, Defendants

provided Ms. Howley with both memoranda in order to allow her to file the documents with the First Judicial District Court in hopes of obtaining a restraining order against Plaintiff.  Plaintiff states that Defendants at that point had already determined Plaintiff to be guilty.  Further, providing the documents to Ms. Howley demonstrated Defendant Brian Snyder's ("Mr. Snyder") bias before the investigation and pre-determination meeting.  Plaintiff's Complaint alleges numerous deficiencies in the discipline and termination process undertaken by the City in violation of the CBA.  Plaintiff alleges that Defendants were required to provide to him with a copy of the investigative report prior to the pre-determination meeting.  Further, the Notice of Contemplated Action was required to be hand-delivered or sent by certified mail within ten days of the date of discovery of the alleged infraction.  Plaintiff alleges that Defendants failed to follow either of these articles of the CBA.  Additionally, Plaintiff alleges that the Notice of Administrative Leave was never properly hand-delivered to him.  These failings, taken together, should have resulted in the mandatory dismissal of the proposed action by the Defendants. Additionally, providing Ms. Howley with a copy of the two memoranda violated the requirement that documents concerning infractions or discipline matters be held confidential unless the employee grants written permission.  As Plaintiff did not grant written permission for Ms. Howley to view the records (or file them as a public record in the First Judicial District Court), Mr. Snyder improperly disclosed them.

3.      Procedural Facts

On February 3, 2015, Plaintiff filed a Petition for Writ of Certiorari and Complaint (**Doc. 1-1**) in the First Judicial District Court, County of Santa Fe, State of New Mexico. On May 28, 2015, Plaintiff filed a First Amended Complaint (**Doc. 1-2**).  Plaintiff subsequently filed a Second Amended Complaint (**Doc. 1-3**) on September 25, 2015.  Plaintiff's Second Amended

Complaint alleged four counts: first, a violation of Plaintiff's substantive and procedural due process rights under the New Mexico Constitution and the Fourteenth Amendment; second, a violation of Plaintiff's liberty interest under the New Mexico Constitution, the Fourteenth Amendment, and 42 U.S.C. § 1983; third, a breach of Plaintiff's contract with the City; and fourth, a breach of the implied covenant of good faith and fair dealing. Defendants removed Plaintiff's case to this Court on October 5, 2015. On May 31, 2016, Defendants filed a Motion for Summary Judgment on the Basis of Qualified Immunity (**Doc. 27**). Plaintiff filed a Response (**Doc. 31**) on July 5, 2016, and Defendants filed a Reply (**Doc. 35**) on August 4, 2016.

## II.     Discussion

Defendants' Motion for Summary Judgment brings three main arguments: first, that Plaintiff received constitutionally adequate process prior to his termination; second, that Defendants' actions did not violate any clearly established law; and third, that Plaintiff's state law claims must fail due to his failure to exhaust administrative remedies. The Court addresses each argument in turn.

### A.     Constitutionally Adequate Process

Defendants first argue that whatever procedural flaws Plaintiff alleges cannot help him show that he was deprived of the procedural protections required by the Constitution prior to receiving disciplinary action. While a public employee has a property interest in maintaining their employment, the Constitution only requires that a governmental entity not deprive a public employee of employment without notice and an opportunity to be heard. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). Defendants argue that Plaintiff did receive constitutionally sufficient due process by receiving oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the

story. *See id*. at 546. Further, Plaintiff attended the pre-determination meeting and was represented by counsel who presented arguments regarding why the proposed discipline would be inappropriate. Plaintiff was then provided with the opportunity to challenge the proposed discipline through a set of written objections filed by his counsel to the City Manager. While Plaintiff argues that the City violated the CBA because it was required to provide him with a Notice of Contemplated Action within ten calendar days of the incident and failed to do so, Defendants note that Plaintiff ignores the exception to this requirement which states that "[i]f an official investigation is deemed necessary by the Human Resources Department, the Notice of Contemplated Disciplinary Action must be given within ten (10) calendar days after the completion of the investigation." The Human Resources Department deemed an official investigation to be necessary, Plaintiff was notified that he was the target of an administrative investigation, and he was provided with the Notice of Contemplated Action four days after the investigation was completed. Thus, Defendants conclude that because Plaintiff received all of the procedural protections to which he was constitutionally entitled, Defendants are therefore entitled to qualified immunity and dismissal of this claim.

      Plaintiff's Response argues that procedural due process provides the right to a hearing that occurs at a meaningful time and in a meaningful manner. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The purpose of the hearing is to provide an opportunity to refuse or explain erroneous factual conclusions and to provide the opportunity to invoke the discretion of the decision maker. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). Plaintiff argues that *Loudermill* requires the employer to provide notice of the charges, a summary of the employer's evidence, and an opportunity to respond before the termination. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004). In this case, Defendants did not give

Plaintiff prior notice of either the confidential memoranda or the Notice of Administrative Leave before Defendants provided Ms. Howley with the confidential disciplinary documents. Plaintiff concludes that these actions show that he did not receive a fair and impartial pre-determination meeting as required under *Loudermill*.

Additionally, Mr. Snyder's decision to share the memoranda with Ms. Howley shows that he was biased against Plaintiff prior to holding the pre-determination meeting. Mr. Snyder also failed to hand-deliver or mail the memoranda to Plaintiff and provide supporting documentation as required by express provisions of the CBA. Plaintiff compares this situation to *Goldberg v. Kelly*, in which the Supreme Court held that a welfare official who participates in a determination that a recipient no longer qualifies for benefits may not participate in reviewing the determination. *See* 397 U.S. 254, 271 (1970). Similarly, Plaintiff argues that Mr. Snyder's participation in issuing the memoranda and providing them to Ms. Howley showed that he made a decision before the pre-determination meeting. Further, such a prior determination renders the post-termination hearing meaningless. *See Matthews v. Harney County, Or., Cty. School Dist. No. 4*, 819 F.2d 889, 893 (9th Cir. 1987). In this situation, Plaintiff's right to a meaningful pre-determination meeting was lost when Defendants determined that Plaintiff was guilty the day after the incident report was filed by Mr. Knockel. Based on this determination and Defendants' failure to comply with the CBA, Plaintiff argues that the post-determination meeting was rendered meaningless.

Turning to qualified immunity, Plaintiff argues that viewed in the light most favorable to him, the evidence establishes that Mr. Snyder denied Plaintiff the right to a pre-determination meeting by conspiring with Ms. Howley to publish confidential disciplinary documents. This conduct violated a constitutional right and the law which was clearly established at the time of

Defendants' actions. The right to an impartial decision maker as an element of due process was established long before Plaintiff's 2014 termination. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). Finally, qualified immunity does not apply to high-ranking public officials, and decision makers in employment termination cases are high-ranking public officials because their acts are policy decisions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986).

The Court finds that while Defendants failed to follow some of the procedures required by the CBA, the due process afforded to Plaintiff clearly met minimal constitutional requirements. The CBA required Defendants to notify the employee of an official investigation unless such notification would jeopardize the confidential nature of the investigation. Plaintiff signed as an acknowledgement of his receipt a memorandum on October 2, 2014 notifying him that he had been placed on administrative leave as a result of an administrative investigation (**Doc. 27-4**). However, it appears that Plaintiff did not sign a memorandum dated October 2, 2014 notifying him that he was the subject of an administrative investigation. Thus, viewing the evidence in the light most favorable to Plaintiff, Defendants appear to have violated the provision of the CBA requiring notification of an official investigation. It also appears that Plaintiff may not have been provided with "supporting documentation" of the charges against him, though the investigative report was available for his review. Additionally, it appears that Defendants violated the CBA by providing Ms. Howley with a copy of the two memoranda without Plaintiff's written permission. However, as noted by Defendants, the Tenth Circuit has made clear that if a termination comports with constitutionally minimal due process requirements, the fact that Defendants may have failed to follow CBA procedural requirements is immaterial. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) ("[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of

due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.") (citations omitted); *Riggins v. Goodman*, 572 F.3d 1101, 1109 n.3 (10th Cir. 2009) ("Because the termination comported with constitutionally minimal due process, though, any allegation that the defendants failed to precisely follow City procedures is immaterial."). Thus, the relevant inquiry as to Plaintiff's due process claims is whether the pre-termination procedures provided to Plaintiff were constitutionally adequate. In the context of a government employee, the individual must be given the opportunity for a hearing before being deprived of any significant property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). This hearing requires only oral or written notice of the charges, an explanation of the evidence, and an opportunity for the employee to present his side of the story. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004).

  Plaintiff received a memorandum titled Notice of Contemplated Action/Pre-Determination Meeting on October 31, 2014 which explained the allegations against him and explained that the investigation conducted by Universal Investigation Services found sufficient evidence to support the allegations that Plaintiff threatened Ms. Howley. Additionally, the Notice stated that the investigative report was available for Plaintiff's review. The Notice also informed Plaintiff that a pre-determination meeting had been scheduled. Plaintiff attended this meeting represented by counsel where he presented his side of the story and gave arguments as to why the proposed discipline would be inappropriate. Additionally, Plaintiff was able to appeal the recommendation that he be terminated to the City Manager. Plaintiff's counsel sent a five-page memorandum to the City Manager detailing the procedural violations under the CBA. Plaintiff argues that the fact he was placed on administrative leave while an investigation was conducted indicated that Mr. Snyder had already adjudicated him as guilty before the pre-

determination meeting.  However, the Court finds that these actions do not indicate that Mr. Snyder made a decision before the pre-determination meeting.  Rather, Mr. Snyder followed the procedures outlined in the CBA for when an official investigation is deemed necessary. *See* **Doc. 31-11**.

As to Plaintiff's argument that Mr. Snyder's bias and involvement in both investigatory and adjudicatory roles defeated the purpose of a pre-determination meeting, the Court finds that Mr. Snyder's alleged bias was not substantial enough to raise constitutional concerns, nor did Mr. Snyder improperly play both an investigatory and adjudicatory role. Additionally, Plaintiff cannot demonstrate that the Defendants violated clearly established law. As Defendants argue, Plaintiff has not alleged that Mr. Snyder played a role in the pre-determination meeting which was presided over by ITT Department Director Renee Martinez.  Regardless, in the absence of a substantial showing of personal bias that would make the risk of unfairness intolerably high, combining investigatory and adjudicatory functions raises no constitutional concerns. *See Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009). This is partially because it is assumed that the supervisor who best knows the charges is the most appropriate decision-maker. *See id*. at 1114.

Plaintiff argues that Mr. Snyder's bias was demonstrated by his failure to provide him with supporting documentation and the issuance of the two memoranda to Ms. Howley. However, the Court finds that while the CBA requires supporting documentation to be included if disciplinary action is taken, the memorandum titled Notice of Contemplated Action/Pre-Determination Meeting indicated that the investigative report, which would be the supporting documentation relied upon, was available for Plaintiff's review in the Human Resources Department.  Additionally, Mr. Snyder's memorandum titled Response to Appeal of Disciplinary

10

Action indicated that Plaintiff and his attorney were provided with the opportunity to review the investigative report but never did so.  The Court does not find this to indicate any bias by Mr. Snyder, nor that the failure to provide supporting documentation fell below constitutional due process standards.  Additionally, the Court finds that providing Ms. Howley with a copy of the two memoranda likewise does not show Mr. Snyder's bias against Plaintiff.  Plaintiff focuses on the fact that several years earlier, Ms. Howley made a complaint against Plaintiff that he believes should have been dismissed.  As there is no indication that any of the Defendants relied upon this prior incident as a reason for Plaintiff's termination, the Court finds these facts to be immaterial to Plaintiff's due process arguments. Thus, the Court finds that the procedures afforded to Plaintiff before his termination were constitutionally adequate and did not constitute a violation of due process.  Mr. Snyder's dual involvement did not render either the pre-determination meeting or the post-termination meeting meaningless.  Additionally, the Court finds that Plaintiff has not demonstrated Mr. Snyder's bias beyond a general allegation that he engaged in a "conspiracy" with Ms. Howley.

In sum, the Court finds that Plaintiff received all of the procedural protections to which he was constitutionally entitled, and Defendants are therefore entitled to qualified immunity and dismissal of this claim.  While Plaintiff argues that decision makers in employment termination cases create policy decisions, citing to *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986), Plaintiff has not previously alleged any sort of § 1983 municipal liability claim, and the Court declines to address a new claim first raised in a response brief.

**B.      No Violation of Clearly Established Law**

Plaintiff contends that City officials violated his constitutional liberty interests and the CBA by providing Ms. Howley with a copy of his Notice of Administrative Investigation and

11

Notice of Administrative Leave without Plaintiff's written permission.  Defendants argue that even if provision of the documents to Ms. Howley was a violation of the CBA, it is a far cry from violating clearly established law.  Plaintiff contends that the release of information that he was the subject of an administrative investigation damaged his name, reputation, honor, integrity, and ability to become re-employed.  Defendants argue that the Tenth Circuit's four-part test to determine whether infringement of a liberty interest is actionable applies in this case.  To be actionable, first, the statements must impugn the good name, reputation, honor, or integrity of the employee; second, the statements must be false; third, the statement must occur in the course of terminating the employee or foreclose other employment opportunities; and fourth, the statements must be published.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1153 (10th Cir. 2001).  Defendants argue that Plaintiff cannot meet this four-part test as the memoranda did not contain false statements.  Additionally, the statement informing Plaintiff that he was under an administrative investigation did not impugn his honor or integrity, and the statements were not issued in the course of terminating his employment but only announced an investigation into the allegations.  Thus, Defendants conclude that no reasonable official could have been on notice that providing the memoranda was in violation of clearly established law.

Turning to Plaintiff's claim that the release of the memoranda violated his privacy interests, Defendants argue that the memoranda do not contain the type of information that has been found deserving of constitutional protection, as being the subject of an internal investigation does not rise to the level of highly personal or intimate information meriting protection under the Constitution.

In response, Plaintiff argues that termination from public employment involves both liberty and property interests.  Plaintiff possesses a legitimate claim of entitlement to continued

employment, and therefore possesses a property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 572–75 (1972). The liberty interest is implicated when discharge jeopardizes the employee's good name, reputation, honor, or integrity of the employee. *See id*. at 573. Deprivation of the liberty interest requires publication, which occurred when Ms. Howley attached the memoranda to her Complaint for a Civil Restraining Order when she filed it with the First Judicial District Court.

The Court agrees with Defendants that Plaintiff cannot show that his liberty interest was infringed upon. The Court finds that while Plaintiff is able to meet three of the requirements under *Stidham*, the memoranda did not contain false statements. 265 F.3d 1144, 1153 (10th Cir. 2001). They merely described the allegations against Plaintiff, informed him that an investigation would be underway, and notified him that he would be placed on administrative leave. In his Response, Plaintiff does not appear to continue his argument that his privacy interests were violated. Regardless, the Court finds that the information in the memoranda was not "highly personal or intimate" warranting protection. *See id*. at 1153.

## C.   Failure to Exhaust Administrative Remedies

Third, Defendants argue that Plaintiff's two state law contractual claims may not be raised in this forum as he did not follow the grievance process mandated by the CBA. The CBA provides that if an appeal of disciplinary action is not satisfactorily resolved at the City Manager level, it may be appealed to binding arbitration by the Union. In this case, Defendants argue that it is undisputed that the Union did not choose to take Plaintiff's case to arbitration, nor did Plaintiff request that the Union do so. Defendants argue that New Mexico law has recognized that an individual employee does not have standing to maintain an action to compel arbitration, as "the grievance procedures provided by a collective bargaining agreement should be a bar to

suits by individual employees against the employer for an alleged violation of the agreement." *Jones v. Int'l Union of Operating Engineers*, 388 P.2d 571, 577 (N.M. 1963).  The only exception to this firm bar to suit is if the Plaintiff demonstrates that the Union acted arbitrarily, fraudulently, and in bad faith, which Plaintiff has not alleged here.  *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  Additionally, while the CBA contemplates that an individual may file a grievance, the grievant must initiate the grievance within ten calendar days that the grievant became aware, or reasonably could have become aware, of the provision in the CBA that was allegedly being violated.

In this case, Defendants argue that Plaintiff did not raise them as official grievances through the grievance process, and is therefore precluded from raising them in this forum for the first time.  Finally, just as Plaintiff is barred from raising his breach of contract claim because of the CBA provisions, Plaintiff should be similarly barred from raising a breach of the implied covenant of good faith and fair dealing as this claim also sounds in contract and not in tort.  *See Bourgeous v. Horizon Healthcare Corp.*, 872 P.3d 852, 857 (N.M. 1994).

In response, Plaintiff argues that exhaustion of state administrative remedies is not required when a plaintiff asserts a § 1983 claim.  *See Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1286 (10th Cir. 2007) ("The exhaustion of administrative remedies is not required of plaintiffs asserting employment termination claims under Section 1983."). Plaintiff argues that *Jones*, relied upon by Defendants, is clearly distinguishable from the facts in this case.  In *Jones*, the plaintiff did not make a due process claim under the Fourteenth Amendment and instead alleged wrongful discharge and a violation of trust against the Union. *See Jones*, 388 P.2d at 577.  Similarly, Defendants rely upon *Cole v. Burns Int'l Security Servs.* which also did not involve a claim that a plaintiff's due process rights were violated.  *See* 105

F.3d 1465, 1478 (D.C. Cir. 1997). Finally, Plaintiff argues that New Mexico courts have established that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract. Thus, Plaintiff's good faith and fair dealing claim should not be dismissed.

The Court notes, as Defendants state in their Reply, that Defendants' argument regarding administrative exhaustion does not apply to Plaintiff's § 1983 claims, but rather Plaintiff's state law breach of contract claim. Plaintiff's claim in that regard argues that Defendants breached the CBA. The CBA provides that "[i]f the appeal of the disciplinary action is not satisfactorily resolved at the City Manager level, it may be submitted to final and binding arbitration, as per Article 11, Section 6, by the Union (*not by the individual employee*) within thirty (30) calendar days . . . ." (**Doc. 27-11**) (emphasis added). It is not disputed that the Union did not choose to take Plaintiff's case to arbitration. Nor has Plaintiff alleged that in failing to do so, "the union acted arbitrarily, fraudulently, and in bad faith in failing to press the employee's grievance through all the procedure provided by the agreement." *Jones*, 388 P.2d at 576. Thus, the Court finds *Jones* to be applicable and finds that the grievance procedures provided by a collective bargaining agreement is a bar to suits by individual employees against the employer for an alleged violation of the agreement. *See id*. The CBA does permit Plaintiff to individually raise claims related to CBA violations through a grievance process "without the intervention of the Union," provided several requirements are met (**Doc. 27-11**). However, the grievant must initiate the grievance within ten calendar days that they became aware, or reasonably could have become aware, that a provision of the CBA was being violated. *See id*. Plaintiff did not do so. Thus, the Court finds that Plaintiff is precluded from raising allegations of CBA violations based on state contract law in this forum for the first time.

The Court also agrees with Defendants that Plaintiff's claim for violation of the duty of the covenant of good faith and fair dealing should also be dismissed for the same reason. The implied covenant of good faith and fair dealing under New Mexico law depends upon the existence of an underlying contractual relationship. *See Elliott Industries Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1114 (10th Cir. 2005). Thus, the implied covenant of good faith and fair dealing may not be used to override the express provisions of an integrated, written contract. *See Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 925 (N.M. Ct. App. 2003). The Court finds that because Plaintiff is precluded from proceeding with a breach of contract claim based on the underlying contract, Plaintiff's good faith and fair dealing claim must be similarly excluded. To hold otherwise would allow an end-run around the express provisions in the CBA.

Accordingly, for the reasons stated in this opinion, the Court finds that Defendants' Motion for Summary Judgment is well-taken, and therefore **GRANTED**.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE